JACK W. LEE, ESQ., SBN 71626
ARON LIANG, ESQ., SBN 228936
SEAN TAMURA-SATO, ESQ., SBN 254092
**MINAMI TAMAKI, LLP**
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel.  (415) 788-9000
Fax: (415) 398-3887
jlee@MinamiTamaki.com
aliang@MinamiTamaki.com
seant@MinamiTamaki.com

Attorneys for Plaintiff and the Putative Class

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JUDY OWENS**, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>**WAL-MART STORES, INC.**, a Delaware corporation,<br><br>        Defendants. | **CASE NO.:**<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**1.  VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW (Cal. Bus. & Prof. Code §§ 17200, et seq.)**<br><br>**2.  VIOLATION OF THE FALSE ADVERTISING LAW (Cal. Bus & Prof. Code § 17500, et seq.)**<br><br>**3.  VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT (Tenn. Code Ann. § 47-18-101, et seq.)**<br><br>**4.  UNJUST ENRICHMENT**<br><br>**DEMAND FOR JURY TRIAL** |

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 9418
Tel. (415) 788-9000
Fax (415) 398-3887

CLASS ACTION COMPLAINT

1

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................1

II. PARTIES ................................................................................................................2

    **A.**    Plaintiff ........................................................................................................2

    **B.**    Defendant ...................................................................................................3

III. JURISDICTION AND VENUE ................................................................................3

IV. FACTUAL ALLEGATIONS ....................................................................................4

    **A.**    BACKGROUND OF THE HERBAL SUPPLEMENTS MARKET ..................4

    **B.**    NEW YORK ATTORNEY GENERAL INVESTIGATES HERBAL SUPPLEMENTS MARKET .................................................................5

    **C.**    NEW YORK ATTORNEY GENERAL EXPANDS PROBE TO HERBAL SUPPLEMENT MANUFACTURERS ................................10

    **D.**    GNC ENTERS INTO SETTLEMENT WITH NEW YORK ATTORNEY GENERAL'S OFFICE ....................................................11

    **E.**    ATTORNEY GENERALS REQUEST CONGRESSIONAL PROBE OF HERBAL SUPPLEMENTS INDUSTRY ........................................12

V. TOLLING OF THE STATUTE OF LIMITATIONS ................................................14

VI. CLASS ACTION ALLEGATIONS .........................................................................15

VII. CAUSES OF ACTION ...........................................................................................17

PRAYER FOR RELIEF .................................................................................................21

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 9418
Tel. (415) 788-9000
Fax (415) 398-3887

i

CLASS ACTION COMPLAINT

1    Plaintiff Judy Owens, individually and on behalf of all others similarly situated

2    ("Plaintiff") brings this lawsuit against Defendant Wal-Mart Stores, Inc. ("Wal-Mart") for the

3    false marketing and sale of herbal supplements.  This action is brought as a class action on behalf

4    of Plaintiff, individually and on behalf of all others similarly situated to recover monetary

5    damages and to obtain injunctive and declaratory relief.

6                                            **I. <u>INTRODUCTION</u>**

7    1.        On <u>February 3, 2015</u>, the New York Attorney General issued a press release

8    stating that it tested the herbal supplements sold by four major American retailers: Wal-Mart

9    Stores, Inc., GNC Holdings, Inc. ("GNC"), Target Corporation ("Target') and Walgreen

10   Company ("Walgreens") under their own brand names.  The New York Attorney General

11   announced that its testing found that the store brands sold by these four major retailers did not

12   contain the promised supplement or contained such low levels of the promised supplement as to

13   be negligible.  For example, a bottle of gingko biloba would not contain any extract from the

14   gingko tree or would contain very small amounts of such extract.  As part of that press release,

15   the New York Attorney General requested that these four retailers stop selling certain branded

16   herbal supplements.

17   2.        Wal-Mart sold herbal supplements under the "Spring Valley" brand name.  The

18   New York Attorney General tested six "Spring Valley" herbal supplements: Gingko Biloba, St.

19   John's Wort, Ginseng, Garlic, Echinacea, and Saw Palmetto (the "Impacted Herbal

20   Supplements").  None of the supplements tested consistently revealed DNA from the labeled

21   herbal supplement.  Instead, the New York Attorney General found certain contaminants in the

22   herbal supplements that they tested, such as allium, pine, wheat/grass, rice mustard, citrus,

23   dracaena (houseplant), and cassava (tropical tree root).

24   3.        This constitutes a breach of trust by Wal-Mart with American consumers.  Herbal

25   supplements, more than other products, are marketed and sold as being beneficial to human

26   health.  These products sell and generate profits for corporations such as Wal-Mart by appealing

27   to the desire of American consumers to protect their health.  The false marketing and sale of

28   products that do not contain the promised nutritional and health benefits is not only an economic

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 9418
Tel. (415) 788-9000
Fax (415) 398-3887

1

CLASS ACTION COMPLAINT

1    fraud but also puts the health of American consumers at risk.  At best, they are not getting the

2    health benefits promised to them.  At worst, they are putting herbal supplements in their body

3    that are causing harm to them.

4          4.      Wal-Mart's business practices have resulted in consumers and customers

5    throughout the State of California and the State of Tennessee acquiring products that do not

6    contain the promised benefits and/or pay additional monies for goods and products than they

7    would have otherwise paid but for the misconduct of Wal-Mart.  This approach to business

8    results in customers, especially Wal-Mart's most loyal customers, being harmed.  These business

9    practices were developed and implemented by Wal-Mart in an effort to reap unjust profits, at the

10   expense of Wal-Mart's customers in the State of California and the State of Tennessee.  Wal-

11   Mart's failure to provide the promised herbal supplements is an example of a company putting

12   profits before safety by cutting costs with little to no regard of the harm such conduct could

13   cause.

14         5.      In order to recover the monies lost by Wal-Mart's customers and to prevent Wal-

15   Mart from continuing to engage in such unlawful and illegal business practices, Plaintiff has

16   brought this action both individually and on behalf of all others similarly situated.

17         6.      This case seeks recovery on behalf of all customers who purchased the Impacted

18   Herbal Supplements from January 1, 2009 through the present (the "Class Period").

19                              **II. <u>PARTIES</u>**

20   **A.      Plaintiff**

21         7.      Plaintiff **JUDY OWENS** is a Tennessee resident who purchased one or more of

22   the Impacted Herbal Supplements from Wal-Mart multiple times during the Class Period.  As a

23   direct and proximate result of Wal-Mart's misconduct alleged herein, Owens purchased

24   Impacted Herbal Supplements that she otherwise would not have purchased but for Wal-Mart's

25   misconduct and/or paid additional monies for Impacted Herbal Supplements than she otherwise

26   would have paid but for Wal-Mart's misconduct.  Owens and the members of the Class will

27   continue to suffer harm if Wal-Mart is not enjoined from continuing its unlawful conduct.

28

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 9418
Tel. (415) 788-9000
Fax (415) 398-3887

2

CLASS ACTION COMPLAINT

**B.    Defendant**

8.    Defendant **WAL-MART STORES, INC. ("Wal-Mart")** is a Delaware corporation with its headquarters located at 702 SW 8th Street, Bentonville, AR 72716.  Wal-Mart is a multinational corporation and one of the largest retailers in the United States.  According to its website, Wal-Mart operates over 11,000 retail units under 71 banners in 27 countries and e-commerce websites in 11 countries.  Wal-Mart claims that is employs approximately 2.2 million employees around the world, 1.3 million in the United States.  During the Class Period, Wal-Mart manufactured, marketed and sold the Impacted Herbal Supplements under its own "Spring Valley" brand name.  Wal-Mart has been and still is engaged in the business of manufacturing, marketing and selling the Impacted Herbal Supplements in the United States.  Plaintiff and the members of the Class have purchased the Impacted Herbal Supplements from Wal-Mart and have suffered harm as a result of the misconduct of Wal-Mart.

### III. JURISDICTION AND VENUE

9.    Defendant Wal-Mart is subject to the jurisdiction of this Court by virtue of its business dealings and transactions in the State of California, by having caused injuries through their acts and omissions throughout the State of California and by their violation of California and state statutory and common law.  Wal-Mart conducts substantial business in the State of California.  California, as the most populous state in the United States, has suffered the greatest harm from this misconduct.  Wal-Mart operates stores in all 50 states of the United States

10.    This Court has subject matter jurisdiction over all causes of action asserted herein pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332, because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, because the proposed Class consists of 100 or more members and minimal diversity exists between the Plaintiff and Wal-Mart.

11.    This Court can exercise personal jurisdiction over the Defendants because each Defendant has sufficient minimum contacts with California to make the exercise of jurisdiction over each Defendant by California courts consistent with traditional notions of fair play and substantial justice.

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 9418
Tel. (415) 788-9000
Fax (415) 398-3887

3

CLASS ACTION COMPLAINT

# IV. <u>FACTUAL ALLEGATIONS</u>

## A.      BACKGROUND OF THE HERBAL SUPPLEMENTS MARKET

12.     The Herbal Supplements market in the United States is sizeable and is one of America's fastest growing markets.  According to a report from HerbalGram, a peer-reviewed journal from the nonprofit American Botanical Council, in 2014, sales of Herbal Supplements in 2013 were in excess of $6 billion in the United States, a 7.9% increase from the prior year. HerbalGram reports that sales of Herbal Supplements have witnessed a decade of consistent growth.  According to the Natural Products Foundation, the overall dietary supplements industry contributes $61 billion to the national economy.  A 2013 research study conducted by the Canadian Institutes of Health Research estimates that there over 65,000 dietary supplements on the market consumed by more than 150 million Americans.  The global Herbal Supplements market is estimated to be approximately $100 billion in annual sales.

13.     Herbal Supplements are nutritional and dietary supplements that contain herbs and other plant parts that are sold for the potential nutritional, therapeutic and health benefits of that herb or plant.  Herbal Supplements may include flowers, leaves, bark, fruit, seeds, stems and roots, either on their own, or in combination with other substances.   However, Herbal Supplements are generally marketed with one primary ingredient and are marketed to provide the nutritional, therapeutic and health benefits of that ingredient.  For example, Echinacea is a flowering plant that has traditionally been used to treat and prevent the common cold, flu and other infections.   The Wal-Mart Spring Valley Echinacea bottle states that it is "Natural Echinacea Whole Herb" and that it is a dietary supplement that provides "IMMUNE HEALTH."

14.     Herbal Supplements are not regulated by the United States Food and Drug Administration ("FDA").  Pursuant to the Dietary Supplement Health and Education Act of 1994, Herbal Supplements are considered "dietary supplements" and therefore come outside the purview of the FDA's regulatory authority.

15.     Major American retailers, such as Wal-Mart, GNC, Target and Walgreens have entered into the booming Herbal Supplements market with their own store brand products.  Wal-Mart's store brand herbal supplements are sold under the "Spring Valley" brand name.  GNC

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 9418
Tel. (415) 788-9000
Fax (415) 398-3887

4

CLASS ACTION COMPLAINT

1    introduced the "Herbal Plus" brand of herbal supplements. Target introduced the "Up & Up"

2    brand. Walgreens uses the brand "Finest Nutrition" for their herbal supplements. All of these

3    brand names are designed to invoke a sense of health and clean living. These retailers have

4    generated massive profits from the sale of these herbal supplements.

5    **B.**    **NEW YORK ATTORNEY GENERAL INVESTIGATES HERBAL**

6          **SUPPLEMENTS MARKET**

7      16.    On <u>February 3, 2015</u>, the New York Attorney General Eric T. Schneiderman

8    issued a press release indicating that it had been conducting an investigation of the Herbal

9    Supplements market. In that press release, the New York Attorney General's Office indicated

10   that it had served "cease and desist" letters on Wal-Mart, GNC, Target and Walgreens,

11   demanding that all of them stop selling the Impacted Herbal Supplements because testing had

12   determined that these products did not contain the promised herbs or plant materials indicated on

13   the packaging.

14      17.    The press release, entitled "A.G. Schneiderman Asks Major Retailers to Halt

15   Sales of Certain Herbal Supplements as DNA Tests Fail to Detect Plant Materials Listed on

16   Majority of Products Tested" reads as follows:

17
18      NEW YORK -- Attorney General Eric T. Schneiderman today announced that his
     office sent letters to four major retailers, GNC, Target, Walmart, and Walgreens, for
19      allegedly selling store brand herbal supplement products in New York that either
     could not be verified to contain the labeled substance, or which were found to contain
20      ingredients not listed on the labels. The letters, sent Monday, call for the retailers to
     immediately stop the sale of certain popular products, including Echinacea, Ginseng,
21      St. John's Wort, and others. Attorney General Schneiderman requested the companies
     provide detailed information relating to the production, processing and testing of
22      herbal supplements sold at their stores, as well as set forth a thorough explanation of
     quality control measures in place.
23
     The letters come as DNA testing, performed as part of an ongoing investigation by
24      the Attorney General's Office, allegedly shows that, overall, just 21% of the test
     results from store brand herbal supplements verified DNA from the plants listed on
25      the products' labels — with 79% coming up empty for DNA related to the labeled
     content or verifying contamination with other plant material. The retailer with the
26      poorest showing for DNA matching products listed on the label was Walmart. Only
27      4% of the Walmart products tested showed DNA from the plants listed on the
     products' labels.

28

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 9418
Tel. (415) 788-9000
Fax (415) 398-3887

5

CLASS ACTION COMPLAINT

"This investigation makes one thing abundantly clear: the old adage 'buyer beware' may be especially true for consumers of herbal supplements," said Attorney General Schneiderman. "The DNA test results seem to confirm long-standing questions about the herbal supplement industry. Mislabeling, contamination, and false advertising are illegal. They also pose unacceptable risks to New York families—especially those with allergies to hidden ingredients. At the end of the day, American corporations must step up to the plate and ensure that their customers are getting what they pay for, especially when it involves promises of good health."

"As the sponsor of a measure that would require labeling that states whether a product has been evaluated by the FDA or not, and legislation to establish a dietary supplements safety committee, I fully support the Attorney General's efforts in this area," said New York State Senator Ken LaValle. " I will continue to fight for legislation that will provide adequate labeling information for the public."

"Since 2005, I have sponsored legislation to create a dietary food supplements safety committee," said New York State Assemblymember Felix Ortiz. "This bill was crafted for the very same reasons the Attorney General is now targeting retailers selling generic supplements that may or may not contain the substances contained on the labels. I support the Attorney General's efforts and I will continue to push for the passage of my bill (A3548) to help reduce this kind of consumer fraud. We need adequate standards and better enforcement over these dietary supplements so consumers will feel confident knowing what they are buying."

"The evidence for these herbs' effectiveness is sketchy to begin with," said David Schardt, Senior Nutritionist of the Center for Science in the Public Interest. "But when the advertised herbs aren't even in many of the products, it's a sign that this loosely regulated industry is urgently in need of reform. Until then, and perhaps even after then, consumers should stop wasting their money. Attorney General Schneiderman has done what federal regulators should have done a long time ago."

"This study undertaken by Attorney General Schneiderman's office is a well-controlled, scientifically-based documentation of the outrageous degree of adulteration in the herbal supplement industry," said Arthur P. Grollman, M.D., Professor of Pharmacological Sciences at Stony Brook University. "I applaud the New York Attorney General for taking the additional step of seeking to remove these products from the marketplace as they can cause serious harm to consumers unaware of the actual ingredients in the pills and capsules they ingest. Hopefully, this action can prompt other states to follow New York's example and lead to the reform of federal laws that, in their current form, are doing little to protect the public."

Using DNA barcoding technology to examine the contents of herbal supplements, the Attorney General's investigation is focused on what appears to be the practice of substituting contaminants and fillers in the place of authentic product. The investigation looked at six different herbal supplements sold at the four major retail companies in thirteen regions across the state, including Binghamton, Brooklyn, Buffalo, Harlem, Nassau County, Plattsburgh, Poughkeepsie, Rochester, Suffolk County, Syracuse, Utica, Watertown, and Westchester County.

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 9418
Tel. (415) 788-9000
Fax (415) 398-3887

CLASS ACTION COMPLAINT

The testing revealed that all of the retailers were selling a large percentage of supplements for which modern DNA barcode technology could not detect the labeled botanical substance.

While overall 21% of the product tests confirmed DNA barcodes from the plant species listed on the labels, 35% of the product tests identified DNA barcodes from plant species not listed on the labels, representing contaminants and fillers. A large number of the tests did not reveal any DNA from a botanical substance of any kind. Some of the contaminants identified include rice, beans, pine, citrus, asparagus, primrose, wheat, houseplant, wild carrot, and others. In many cases, unlisted contaminants were the only plant material found in the product samples.

The U.S. Food and Drug Administration requires companies to verify that their products are safe and properly labeled for their contents, but unlike drugs, supplements do not undergo the agency's rigorous evaluation process, which scrutinizes everything about the drug—from the design of clinical trials to the severity of side effects to the conditions under which the drug is manufactured.

If the producers of herbal supplements fail to identify all the ingredients on a product's label, a consumer with food allergies, or who is taking medication for an unrelated illness, is taking a potentially serious health risk every time a contaminated herbal supplement is ingested. The Attorney General's investigation is focused on potential violations of New York's General Business Law and Executive Law, including deceptive practices and deceptive advertising.

An expert in DNA barcoding technology, Dr. James A. Schulte II of Clarkson University in Potsdam, N.Y., was hired by the Attorney General's office to perform the testing. DNA barcodes are short genetic markers in an organism's DNA and are used to identify it as belonging to a particular species. Barcodes provide an unbiased, reproducible method of species identification. Barcodes can be used to determine the exact plant species being tested.

The DNA tests were performed on three to four samples of each of the six herbal supplements purchased from the New York stores. Each sample was tested with five distinct sequence runs, meaning each sample was tested five times. Three hundred and ninety tests involving 78 samples were performed overall.

GNC:

Six "Herbal Plus" brand herbal supplements per store were purchased and analyzed: Gingko Biloba, St. John's Wort, Ginseng, Garlic, Echinacea, and Saw Palmetto. Purchased from four locations with representative stores in Binghamton, Harlem, Plattsburgh & Suffolk.

Only one supplement consistently tested for its labeled contents: Garlic. One bottle of Saw Palmetto tested positive for containing DNA from the saw palmetto plant, while three others did not. The remaining four supplement types yielded mixed results, but none revealed DNA from the labeled herb.

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 9418
Tel. (415) 788-9000
Fax (415) 398-3887

7

CLASS ACTION COMPLAINT

Of 120 DNA tests run on 24 bottles of the herbal products purchased, DNA matched label identification 22% of the time.

Contaminants identified included asparagus, rice, primrose, alfalfa/clover, spruce, ranuncula, houseplant, allium, legume, saw palmetto, and Echinacea.

Target:

Six "Up & Up" brand herbal supplements per store were purchased and analyzed: Gingko Biloba, St. John's Wort, Valerian Root, Garlic, Echinacea, and Saw Palmetto. Purchased from three locations with representative stores in Nassau County, Poughkeepsie, and Syracuse.

Three supplements showed nearly consistent presence of the labeled contents: Echinacea (with one sample identifying rice), Garlic, and Saw Palmetto. The remaining three supplements did not revealed DNA from the labeled herb.

Of 90 DNA tests run on 18 bottles of the herbal products purchased, DNA matched label identification 41% of the time.

Contaminants identified included allium, French bean, asparagus, pea, wild carrot and saw palmetto.

Walgreens:

Six "Finest Nutrition" brand herbal supplements per store were purchased and analyzed: Gingko Biloba, St. John's Wort, Ginseng, Garlic, Echinacea, and Saw Palmetto. Purchased from three locations with representative stores in Brooklyn, Rochester and Watertown.

Only one supplement consistently tested for its labeled contents: Saw Palmetto. The remaining five supplements yielded mixed results, with one sample of garlic showing appropriate DNA. The other bottles yielded no DNA from the labeled herb.

Of the 90 DNA test run on 18 bottles of herbal products purchased, DNA matched label representation 18% of the time.

Contaminants identified included allium, rice, wheat, palm, daisy, and dracaena (houseplant).

Walmart:

Six "Spring Valley" brand herbal supplements per store were purchased and analyzed: Gingko Biloba, St. John's Wort, Ginseng, Garlic, Echinacea, and Saw Palmetto. Purchased from three geographic locations with representative stores in Buffalo, Utica and Westchester.

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 9418
Tel. (415) 788-9000
Fax (415) 398-3887

8

CLASS ACTION COMPLAINT

None of the supplements tested consistently revealed DNA from the labeled herb. One bottle of garlic had a minimal showing of garlic DNA, as did one bottle of Saw Palmetto. All remaining bottles failed to produce DNA verifying the labeled herb.

Of the 90 DNA test run on 18 bottles of herbal products purchased, DNA matched label representation 4% of the time.

Contaminants identified included allium, pine, wheat/grass, rice mustard, citrus, dracaena (houseplant), and cassava (tropical tree root).

The Attorney General's investigation follows an important study conducted by the University of Guelph in 2013 that also found contamination and substitution in herbal products in most of the products tested. As was said at the time by a spokesperson for the University of Guelph, "The industry suffers from unethical activities by some manufacturers."

The market for herbal supplements is significant. The Natural Products Foundation estimates that the dietary supplement industry contributes $61 billion dollars to the national economy. A 2013 study from the Canadian Institutes of Health Research estimated there are about 65,000 dietary supplements on the market consumed by more than 150 million Americans.

That same study also found that more than half of Food and Drug Administration (FDA) Class I drug recalls between 2004 and 2012 were dietary supplements. Class I recalls are reserved for drugs or supplements for which there is a "reasonable probability that [their use] will cause serious adverse health consequences or death."

The Attorney General thanks Dr. James A. Schulte II of Clarkson University in Potsdam, N.Y. for providing his expertise in DNA barcode testing for this investigation.

The case is being handled by Executive Deputy Attorney General Marty Mack and Assistant Attorney General Deanna Nelson with the assistance of NYAG's thirteen regional offices.

18. In regards to Wal-Mart, the New York Attorney General's testing of six products found that "**[n]one of the supplements tested consistently revealed DNA from the labeled herb.**" In other words, none of the "Spring Valley" Herbal Supplements sold by Wal-Mart have the herbs or plant materials that they were marketed as having.

19. Plaintiff has been impacted by the misconduct and deception of Wal-Mart in that they purchased one or more of the Impacted Herbal Supplements during the Class Period and suffered both economic harm and potentially physical harm. Plaintiff was consuming products that were not providing the promised nutritional, therapeutic or health benefits or potentially

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 9418
Tel. (415) 788-9000
Fax (415) 398-3887

9

CLASS ACTION COMPLAINT

even causing them harm. Plaintiff brings this lawsuit to prevent Wal-Mart from continuing to engage in such misconduct.

## C. NEW YORK ATTORNEY GENERAL EXPANDS PROBE TO HERBAL SUPPLEMENT MANUFACTURERS

20. Three weeks after sending "cease and desist" letters to Wal-Mart, GNC, Target and Walgreens, the New York General Attorney's Office shifted to the manufacturers, targeting four manufacturers of Herbal Supplements demanding that they provide detailed ingredient and quality control information on all Herbal Supplements sold in the State of New York.

21. Those letters were sent to: (1) Pharmavite LLC in Mission Hills, California, make of the Nature Made brand of Herbal Supplements, (2) NBTV Inc. of Ronkonkoma, New York, maker of Sundown Naturals, Nature's Bounty, Vitamin World and other brands of Herbal Supplements, (3) Nature's Way Products Inc. of Lehi, Utah, maker of Nature's Way brand of Herbal Supplements, and (4) Nutraceutical Corp. of Park City, Utah, maker of Herbs for Kids and other brands of Herbal Supplements.

22. "The scientific community, public health officials, and others have raised serious doubt about the steps taken to ensure the safety and efficacy of the herbal dietary supplements taken daily by millions of Americans," New York Attorney General Schneiderman said in his letter to the manufacturers. "As part of a broader investigation, NYAG is reviewing the sufficiency of the measures manufacturers and retailers are taking to independently assess the validity of their representations and advertising in connection with the sale of herbal supplements."

In his letter, Scheneiderman asked for, among other things:

• The name, concentration, country of origin, and any extraction method used for each component of the supplement;

• A description of analytic testing used to confirm the content and quality of any ingredient as well as the finished product;

• A detailed description of measures taken to ensure quality across the supply chain from farm to factory;

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 9418
Tel. (415) 788-9000
Fax (415) 398-3887

10

CLASS ACTION COMPLAINT

- Testing done to substantiate label claims such as "gluten free" or "hypoallergenic";

- Copies of all documents related to adverse health consequences, including allergic reactions.

23.     Schneiderman's spokesman Matt Mittenthal said, "It's important for both retailers and manufacturers to verify the contents of the products they sell so consumers can be protected against deceptive claims on packaging, and against potentially dangerous reactions to undisclosed ingredients."

24.     The FDA website states that there are no regulations that require a company to disclose to the FDA or consumers the information that they have gathered about the safety or purported benefits of their Herbal Supplement products or other dietary supplement products.

25.     According to New York Attorney General Schneiderman, lax oversight of the Herbal Supplements and dietary supplements market can result in serious public health consequences.   Schneiderman noted the 2013 hepatitis outbreak traced to a tainted dietary supplement and the death of a baby at a Connecticut hospital after doctors gave the child a probiotic supplement later found to be contaminated with yeast.

**D.     GNC ENTERS INTO SETTLEMENT WITH NEW YORK ATTORNEY GENERAL'S OFFICE**

26.     On March 30, 2015, GNC and the New York Attorney General's Office reached a settlement implementing reforms in GNC's business process.   According to the New York Attorney General's office, GNC implemented new standards in authenticating herbal Supplements to ensure their purity and to educate consumers about their chemical content.

27.     The settlement agreement included performing DNA barcoding on the "active" plant ingredients used in its products, implementing testing for contamination with allergens, both before and after production, and posting prominent signage advising consumers of the processed, chemical nature of extracts.   The settlement agreement requires GNC to implement these new procedures in all of its more than 6,000 stores nationwide.

28.     "GNC and the NY Attorney General's office are to be congratulated for so promptly reaching agreement on the means of providing monitoring of herbal supplements so as

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 9418
Tel. (415) 788-9000
Fax (415) 398-3887

11

1  to more effectively ensure safety of consumers who purchase these products," said Arthur P.

2  Grollman, M.D., Professor of Pharmacological Sciences at Stony Brook University. "This

3  agreement should serve as a model for other companies and, hopefully, for the federal

4  government to enact similar regulations. Adoption of DNA barcoding to confirm the authenticity

5  of all plants prior to processing is a major step forward in the regulation of herbs."

6  **E.    ATTORNEY GENERALS REQUEST CONGRESSIONAL PROBE OF HERBAL**

7  **SUPPLEMENTS INDUSTRY**

8       29.      On <u>April 2, 2015</u>, Schneiderman and Indiana Attorney General Greg Zoeller

9  announced that fourteen Attorney Generals across the United States had formed a bipartisan

10  group to ask Congress to launch a comprehensive inquiry into the Herbal Supplements industry.

11       30.      The press release, entitled "A.G. Schneiderman and A.G. Zoeller Lead Bipartisan

12  Group of 14 Attorneys General Calling For Congressional Inquiry Into Herbal Supplements

13  Industry" reads as follows:

14  > Attorney General Eric T. Schneiderman of New York and Attorney General Greg
15  > Zoeller of Indiana today announced that they are leading a bipartisan group of 14
16  > attorneys general calling on Congressional leaders to launch a comprehensive inquiry
     > into the herbal supplements industry. The group has sent a letter asking for Congress to
17  > consider a more robust oversight role for the U.S. Food and Drug Administration with
     > respect to herbal supplements. The letter follows New York State's investigation that
18  > raised serious concerns about the marketing and safety of these products, which are
     > regularly consumed by millions of Americans.

19
20  > "When consumers take an herbal supplement, they should be able to do so with full
     > knowledge of what is in that product and confidence that every precaution was taken to
21  > ensure its authenticity and purity," said Attorney General Schneiderman. "I am proud
     > to stand with a bipartisan group of attorneys general calling for a Congressional inquiry
22  > into whether stronger FDA oversight of the herbal supplements industry is needed. My
     > office's investigation reaffirmed long-standing concerns about the herbal supplements
23  > industry. The millions of consumers who take herbal supplements deserve to know
     > whether they are getting what they pay for, and that these products are properly labeled
24  > and safe."

25  > "My focus is on ensuring the best consumer protections for dietary and herbal
26  > supplements, and eliminating potential false or deceptive labeling that could be
     > harmful to consumers," said Indiana Attorney General Greg Zoeller. "My fellow
27  > attorneys general and I are urging Congress to consider stronger federal oversight of
     > the herbal supplements industry so that members of the public have full information
28  > about a product they are ingesting."

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 9418
Tel. (415) 788-9000
Fax (415) 398-3887

12

CLASS ACTION COMPLAINT

The multibillion dollar herbal supplement industry is built on the promise that its products will improve the health and well-being of those who use them. Yet, the New York investigation has raised serious concerns about the marketing and safety these products. Recent tests conducted by the New York Attorney General's Office of popular herbal supplements showed that products were contaminated with allergens, off-label plant species, and other potentially dangerous substances. Some products were so thoroughly processed that the genetic material of the original natural plant source was unrecognizable. Other research has suggested that some herbal supplements have been found to contain high levels of heavy metals like lead, mercury, and arsenic. One study even found that a popular herbal supplement designed to reduce menopause symptoms may have caused severe liver damage in certain women.

The letter to Congressional leaders is co-signed by Attorneys General George Jepsen (D-CT), Karl Racine (D-DC), David M. Louie (D-HI), Lawrence Wasden (R-ID), Greg Zoeller (R-IN), Tom Miller (D-IA), Jack Conway (D-KY), Maura Healey (D-MA), Jim Hood (D-MS), Joseph Foster (D-NH), Eric Schneiderman (D-NY), Joey P. San Nicolas (D-MP), Kathleen Kane (D-PA), and Peter Kilmartin (D-RI) and urges Congressional subcommittees to act in concert with the FDA to address the following issues:

The adequacy and effectiveness of existing quality assurance measures for verifying the source, identity, purity, potency, and quality of ingredients and fillers;

The adequacy and effectiveness of existing regimes for verifying the identity, composition, purity, potency, and quality of the finished products sold by domestic manufacturers and retailers;

The degree to which product labels and marketing, including the use of the terms 'natural,' 'herbal,' and 'extract,' mislead consumers about the contents of herbal and dietary supplements, and whether the FDA should develop standards and restrictions governing their use;

The extent to which Congress should mandate, or direct the FDA to develop enhanced, uniform, industry-wide quality assurance and verification regimes to guarantee the source, identity, purity, and potency of materials incorporated into herbal and dietary supplements; and,

The extent to which Congress should mandate, or direct the FDA to develop, enhanced manufacturing and supply chain management requirements for the industry to guarantee the safety and efficacy of the finished herbal and dietary supplements.

In February of 2015, New York Attorney General Eric Schneiderman asked major retailers to halt the sale of certain herbal supplements following DNA tests that failed to detect plant materials listed on the labels of the majority of products tested. Earlier this month, Attorney General Schneiderman announced the formation of a multi-state coalition as part of an expanded probe of the herbal supplement industry.

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 9418
Tel. (415) 788-9000
Fax (415) 398-3887

13

CLASS ACTION COMPLAINT

Earlier this week Attorney General Eric Schneiderman announced a historic agreement with GNC to implement landmark reforms for herbal supplements. Under the agreement, GNC, one of the nation's largest supplement retailers, will use DNA barcoding to authenticate plants used in supplements and adopt new testing standards to prevent contamination. The move is designed to improve transparency for consumers and is a first step towards ensuring greater consumer safety.

31.     Plaintiff brings this lawsuit in the wake of the discovery that major retailers such as Wal-Mart, GNC, Target and Walgreens are selling products that are marketed as containing the nutritional, health and therapeutic benefits of the listed herbs or plant materials, when the reality is that these products do not contain the promised herbs or plant materials.  Therefore, these products also do not provide the promised nutritional, health and therapeutic benefits.

32.     This misconduct is not only an economic fraud that has cost American consumers millions, if not tens or hundreds of millions of dollars, it also has negatively impacted the health and safety of Americans.  Plaintiff brings this lawsuit to recoup the losses suffered by Plaintiff and other Class members and to prevent this misconduct from occurring again in the future.

## V. <u>TOLLING OF THE STATUTE OF LIMITATIONS</u>

33.     Throughout the Class Period, Wal-Mart and the other major retailers of Herbal Supplements concealed the fact that they were advertising, marketing and selling Impacted Herbal Supplements that did not have the promised herbs and plant materials as advertised.  By advertising, marketing and selling the Impacted Herbal Supplements, Wal-Mart had a duty to tell the complete truth and to disclose all materials facts regarding the Impacted Herbal Supplements. Wal-Mart uniformly fraudulently concealed the complete truth regarding the Impacted Herbal Supplements.

34.     As a result of Wal-Mart's fraudulent concealment, all applicable statutes of limitations affecting the claims of the Plaintiff and the members of the Class have been tolled. Plaintiff and the members of the Class did not discover, nor could have discovered through reasonable diligence, that Wal-Mart was selling Herbal Supplements that did not contain the promised herbs or plant materials or contained extremely low levels of the promised herbs or plant materials.  Plaintiff could not have discovered the misconduct alleged herein at an earlier date by the exercise of reasonable due diligence because of the deceptive practices and

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 9418
Tel. (415) 788-9000
Fax (415) 398-3887

14

CLASS ACTION COMPLAINT

1    techniques of secrecy employed by Wal-Mart to avoid detection and affirmatively conceal such

2    misconduct.

3        35.     As a result of the fraudulent concealment of Wal-Mart's misconduct, Plaintiff

4    assert the tolling of the applicable statute of limitations affecting the causes of action by Plaintiff

5    and the members of the Class.

6                        **VI. <u>CLASS ACTION ALLEGATIONS</u>**

7        36.     Pursuant to Rules 23(a), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil

8    Procedure, Plaintiff brings this class action individually and also on behalf and all others

9    similarly situated pursuant to seeking monetary damages, equitable and injunctive relief on

10   behalf of the following Class:

> All persons or entities that directly purchased or otherwise purchased any of the
> Impacted Herbal Supplements from Wal-Mart from January 1, 2009 through the
> present (the "Class Period"). Excluded from the Class are Defendants and their
> employees, affiliates, parents, subsidiaries, and co-conspirators, whether or not
> named in this Complaint, and the United States government.

15       37.     **Numerosity**:  Defendant Wal-Mart is one of the largest retailers in the United

16   States.  According to its 2014 Annual Report, Wal-Mart had total annual revenues of over $476

17   billion.  Herbal Supplements are a billion dollar business, with millions of adults in the United

18   States Herbal Supplements.   Plaintiff therefore believes that the number of customers of

19   Defendant Wal-Mart who are members of the Class, numbers in the tens of thousands, if not

20   more.  Plaintiff does not know the exact number and identities of these purchasers but their

21   identities are presumably known by Defendants.  The large number of potential class members

22   and that fact that they are geographically dispersed makes joinder of all members impracticable.

23       38.     **Common Questions of Law or Fact:**  There are questions of law and fact that

24   are common to all members of the Class, including but not limited to:

> a.    Whether Defendant Wal-Mart violated Business & Professions
>       Code §§ 17200, et seq. by engaging in unfair, unlawful and/or
>       illegal business practices;
>
> b.    Whether Defendant Wal-Mart violated Business & Professions
>       Code §§ 17500, et seq. by engaging in false advertising;

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 9418
Tel. (415) 788-9000
Fax (415) 398-3887

15

CLASS ACTION COMPLAINT

c.  Whether Defendant Wal-Mart violated Tenn. Code Ann. § 47-18-01, et seq. by engaging in unfair, unlawful and/or illegal business practices;

d.  Whether the information omitted was material;

e.  Whether Defendant Wal-Mart converted the monies of the Plaintiff and the members of the Class;

f.  Whether the Defendants' misconduct resulted in the Defendants receiving unjust enrichment;

g.  The manner and nature in which Defendant Wal-Mart misrepresented the nature and quality of the Herbal Supplements it sold under its own "Spring Valley" store brand;

h.  The duration of Defendant Wal-Mart's misconduct;

i.  Whether the misconduct of Defendants, as alleged in this Complaint, caused injury to Plaintiff and other members of the Class;

j.  The appropriate injunctive and equitable relief for the Class; and

k.  The appropriate measure of damages sustained by Plaintiff and the members of the Class.

39.  **Typicality:**  Plaintiff purchased one or more of the Impacted Herbal Supplements from Wal-Mart during the Class Period.  Plaintiff therefore was deceived into purchasing a product that was improperly marketed and sold like other Class members.  Plaintiff's claims are typical of those of the members of the Class.  Plaintiff's interests are coincident with and not antagonistic of the members of the Class.

40.  **Fair and Adequate Representation of the Class:**  Plaintiff's claims are typical of the claims of the other members of the Class.  Plaintiff will fairly and adequately protect the interests of the members of the Class.  In addition, Plaintiff is represented by counsel, who are highly skilled and experienced in the prosecution of antitrust cases and complex class actions. Plaintiff and her counsel are more than capable of fairly and adequately protecting the interests of the Class.

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 9418
Tel. (415) 788-9000
Fax (415) 398-3887

16

CLASS ACTION COMPLAINT

41.   **Superiority of the Class Action Device:**  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications. The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently and without duplication of effort and expense that numerous individual actions would engender.  The Class is readily definable and is one for which records should exist in the files of Defendants and their co-conspirators, and prosecution as a class action will eliminate the possibility of repetitious litigation.  Class treatment will also permit the adjudication of relatively small claims by many members of the Class who otherwise could not afford to litigate an antitrust claim such as the ones asserted in this Complaint. This class action presents no difficulties of management that would preclude its maintenance as a class action.

## VII. <u>CAUSES OF ACTION</u>

### <u>FIRST CAUSE OF ACTION</u>

**Violation of the California Unfair Competition Law (Bus. & Prof. Code §§ 17200, *et seq.*)**

42.   Plaintiff incorporates and re-alleges each allegation set forth in the preceding paragraphs of this Complaint.

43.   Defendant Wal-Mart's business practices as alleged in this complaint violate the California Unfair Competition Law because Defendant Wal-Mart's business practices are unfair, unlawful and fraudulent.

44.   Defendant Wal-Mart's acts and practices described herein are unfair in that there is no benefit from Defendant Wal-Mart's business practices while such business practices result in significant and substantial harm to consumers.  Furthermore, Defendant Wal-Mart's business practices are contrary to California's public policy of maintaining a business environment free of deceptive acts and overpricing of customers.

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 9418
Tel. (415) 788-9000
Fax (415) 398-3887

CLASS ACTION COMPLAINT

45. Defendant Wal-Mart's acts and practices described herein are also unlawful in that Defendant Wal-Mart is violating California state law in the manner in which it advertises, markets and sells Herbal Supplements to customers.

46. Defendant Wal-Mart's acts and practices as described herein also constitute fraudulent business practices, in that the uniform conduct of Defendant Wal-Mart has a tendency to deceive Plaintiff and the members of the Class, who acted in reliance on those deceptions.

47. Defendant Wal-Mart's unfair and fraudulent business acts and practices include, but are not limited to advertising for sale Herbal Supplements under its own "Spring Valley" brand that does not contain the herbs or plant materials advertised or contains extremely low amounts of the advertised herbs or plant materials.

48. Plaintiff and the members of the Class have been injured in fact and lost money or property as a result of purchasing Herbal Supplements from Wal-Mart under its own "Spring Valley" brand that does not contain the herbs or plant materials advertised or contains extremely low amounts of the advertised herbs or plant materials that Plaintiff and the members of the Class otherwise would not have bought or would have bought at a lower price, they knew the truth.

49. Pursuant to Business and Professions Code §§ 17200 and 17203, Plaintiff, individually and on behalf of all others similarly situated, seek relief as prayed for below.

## SECOND CAUSE OF ACTION

**Violation of California False Advertising Law (Bus. & Prof. Code §§ 17200, *et seq.*)**

50. Plaintiff incorporates and re-alleges each allegation set forth in the preceding paragraphs of this Complaint.

51. Defendant Wal-Mart engaged in false advertising in violation of Business and Professions Code §§ 17500, *et seq* Plaintiff and the members of the Class relied on the advertisements and suffered injury in fact and lost money or property as a result of Defendant Wal-Mart's overpricing of its products.

52. The false advertising, marketing and sale of the Impacted Herbal Supplements by Defendant Wal-Mart was uniformly directed at Plaintiff and the members of the Class. Plaintiff

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

18
CLASS ACTION COMPLAINT

1  and the members of the Class relied on the advertisements and marketing and suffered injury in

2  fact and lost money or property as a result of Defendant Wal-Mart's false advertising, marketing

3  and sale of the Impacted Herbal Supplements.

4      53.    Pursuant to Business and Professions Code § 17500, Plaintiff, individually and on

5  behalf of all others similarly situated, seek relief as prayed for below.

6  ### **THIRD CAUSE OF ACTION**

7  **Violation of Tennessee Consumer Protection Act (Tenn. Code Ann. §§ 47-18-101, *et seq.*)**

8      54.    Plaintiff incorporates and re-alleges each allegation set forth in the preceding

9  paragraphs of this Complaint.

10     55.    The Tennessee Consumer Protection Act ("TCPA") states that "[u]nfair or

11  deceptive acts or practices affecting the conduct of any trade or commerce constitute unlawful

12  acts or practices." Tenn. Code Ann. § 47-18-104(a).

13     56.    Tenn. Code Ann. § 47-18-104(b) provides a non-exclusive list of conduct that

14  would constitute a violation of the TCPA.  Wal-Mart has violated the TCPA in at least the

15  following regards:

16          a.    In violation of Tenn. Code Ann. § 47-18-104(b)(7), Defendant Wal-Mart
17                represented that goods are of a particular standard, quality or grade, when
                  they were of another;
18
19          b.    In violation of Tenn. Code Ann. § 47-18-104(b)(9), Defendant Wal-Mart
                  advertised goods with intent not to sell them as advertised;
20
21          c.    In violation of Tenn. Code. Ann. § 47-18-104(b)(21), Defendant Wal-Mart
                  used statements or illustrations in any advertisement which create a false
22                impression of the grade, quality, quantity, make, value, age, size, color,
                  usability or origin of the good offered.

23     57.    Defendant Wal-Mart provides "goods" within the meaning of Tenn. Code Ann. §

24  47-18-103(18).

25     58.    In the course of Wal-Mart's business, it knowingly, willfully and intentionally

26  failed to disclose, and actively concealed material facts and made false and misleading

27  statements regarding the contents of their Herbal Supplements.

28

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

19

CLASS ACTION COMPLAINT

59.     Wal-Mart's actions as set forth above occurred in the conduct of trade or commerce, and constitute unfair or deceptive trade practices under the TCPA.

60.     Plaintiff and the members of the Class were injured as a result of Wal-Mart's conduct, and suffered ascertainable monetary loss.  Buyers such as Plaintiff and members of the Class would have acted differently knowing that the Defendants were selling Herbal Supplements that did not contain the very herbs and plant materials they were represented to contain. Plaintiff and members of the Class would have wanted to know, as would any reasonable person, that Wal-Mart's "Spring Valley" store brand Herbal Supplements failed to contain the ingredients they were supposed to contain and this information would have changed their and any reasonable customer's decision to purchase Wal-Mart's Herbal Supplements.

61.     Pursuant to Tenn. Code. Ann. § 47-18-109, Plaintiff, individually and on behalf of all others similarly situated, seek relief as prayed for below.

## FOURTH CAUSE OF ACTION

### UNJUST ENRICHMENT

62.     Plaintiff incorporates and re-alleges each allegation set forth in the preceding paragraphs of this Complaint.

63.     By engaging in the conduct described above, Defendant Wal-Mart had unjustly enriched itself at the expense of Plaintiff and the members of the Class, and has obtained monies from Plaintiff and other members of the Class that Defendant Wal-Mart had no right to.  In equity and good conscience, Defendant Wal-Mart should fully compensate Plaintiff and the members of the Class for the damages that they have suffered as a result of Defendant Wal-Mart's actions.

64.     By reason of the foregoing, Defendant Wal-Mart is liable to Plaintiff and the other members of the Class for the damages they have suffered as a result of Defendant Wal-Mart's actions, the amount of such damages to be determined at trial.

/ / /

/ / /

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 9418
Tel. (415) 788-9000
Fax (415) 398-3887

20

CLASS ACTION COMPLAINT

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays as follows:

A.      That the Court determines that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, appoint Plaintiff as Class Representative, appoint Plaintiff's counsel of record as Class Counsel and direct that notice of this action as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to the Class;

B.      For an order entering judgment in favor of Plaintiff and the Class and against Defendant Wal-Mart;

C.      The unlawful conduct alleged herein and the acts done in furtherance thereof by Defendant Wal-Mart, be adjudged and decreed to be unlawful and in violation of California and Tennessee statutory and common law:

D.      For an order enjoining Defendant Wal-Mart from continuing to engage in the unlawful acts and unfair business practices as alleged in this complaint;

E.      For an order awarding Plaintiff restitution and actual and consequential damages against Defendant Wal-Mart in favor of Plaintiff and the Class in an amount to be determined at trial, including treble damages to the extent allowed by law;

F.      For punitive damages in an amount to be determined at trial;

G.      For an order awarding Plaintiff and the members of the Class reasonable attorneys' fees, expert-witness fees, and other costs pursuant to California and Tennessee laws as may be applicable;

H.      For an order awarding Plaintiff and the Class pre- and post-judgment interest as provided by law, and that such interest be awarded at the highest legal rate;

I.      Plaintiff and the Class have such other and further relief as the case may require and the Court may deem just and proper.

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 9418
Tel. (415) 788-9000
Fax (415) 398-3887

21

CLASS ACTION COMPLAINT

1

2      Dated:  April 24, 2015                          **MINAMI TAMAKI LLP**

3

4                                                      By:    _/s/ Jack W. Lee_
                                                          JACK W. LEE, ESQ.
5                                                         ARON LIANG, ESQ.
                                                          Attorneys for Plaintiff
6                                                         AND THE PUTATIVE CLASS

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

1

**JURY DEMAND**

2          Plaintiff hereby demands a jury trial of all issues so triable.

3

4    Dated:  April 24, 2015                    **MINAMI TAMAKI LLP**

5

6                                    By:  _/s/ Jack W. Lee_____
                                         JACK W. LEE, ESQ.
7                                        ARON LIANG, ESQ.
                                         Attorneys for Plaintiff
8                                        AND THE PUTATIVE CLASS

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 9418
Tel. (415) 788-9000
Fax (415) 398-3887

23

CLASS ACTION COMPLAINT